UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRANDON BELCHER | ) | CASE NO.: |
| 1340 Doty Drive | ) | |
| Akron, Ohio 44306 | ) | |
| | ) | JUDGE: |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **PLAINTIFF'S COMPLAINT** |
| OAKMONT EDUCATION LLC | ) | |
| c/o Statutory Agent John Stack | ) | |
| 481 N. Cleveland Massillon Rd | ) | |
| Akron, OH 44333 | ) | |
| | ) | (Jury Demand Endorsed Herein) |
| | ) | |
| Defendant. | ) | |

Now comes Plaintiff Brandon Belcher, by and through counsel, and for his Complaint against Oakmont Education LLC ("Oakmont") states and alleges the following:

### INTRODUCTION

1. Plaintiff brings this lawsuit as a result of Defendant's failure to pay Plaintiff overtime compensation at the rate of one and one-half times his regular rate of pay for all of the hours he worked over 40 each workweek, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331.

3. Venue lies in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant conducts business and has its principle place of business in Summit County, Ohio, within this District and Division.

## PARTIES

4. At all times relevant herein, Plaintiff was a citizen of the United States and resident of Summit County, Ohio.

5. At all times relevant herein, Plaintiff was an employee within the meaning of 29 U.S.C. § 203(e).

6. At all times relevant herein, Defendant Oakmont maintained its principal place of business in Akron, Ohio, and was an employer within the meaning of 29 U.S.C. § 203(d).

7. At all times relevant herein, Defendant was an enterprise within the meaning of 29 U.S.C. § 203(r).

8. At all times relevant herein, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

9. At all times relevant herein, Plaintiff was an employee engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

## FACTUAL ALLEGATIONS
### (Failure to Pay Overtime Compensation)

10. Plaintiff Brandon Belcher was employed by Defendant as a Janitor from September 27, 2019 through April 27, 2020 and estimates that he worked 55 or more hours per week on average.

11. Defendant classified Plaintiff as a "non-exempt" employee, and Plaintiff was told that he was going to be paid an hourly rate of eleven dollars ($11.00) an hour.

12. Plaintiff was given a debit card onto which his bi-monthly pay was credited. For the duration of his employment, Plaintiff did not receive any hard copies or electronic copies of his pay stubs or summaries showing a breakdown of his pay.

13. Plaintiff regularly worked over 40 hours per week, but Defendant failed to pay Plaintiff overtime compensation for all of the hours he worked over 40 each workweek.

14. Plaintiff was required to sign in and sign out at the commencement and conclusion of each work day, noting the times and total hours worked.

15. Plaintiff was originally told that his work hours were from 9:00 am to 5:00 pm, Monday through Friday and he could take 30 minutes for lunch.

16. Plaintiff's five-year old daughter was a student at the school and her school day began at 8:00 am, Monday through Friday, so Plaintiff, being the parent to bring her to school every day, was at the school each and every day before 8:00 am so his daughter would be on time.

17. Instead of beginning work at 9:00 am, Plaintiff began work Monday through Friday promptly at 8:00 am.

18. Plaintiff asked permission from the school if he could take his half hour lunch at 3:00 pm, Monday through Friday, so he could walk his daughter home from school.

19. The school did not want Plaintiff to leave the premises and instead suggested that his daughter attend the afterschool learning program. Plaintiff's daughter attended the afterschool learning program and Plaintiff and his daughter would leave the school daily Monday through Friday when Plaintiff ended his work day at 6:00 pm.

20. Plaintiff was told by other staff at the school that before he was hired on as the sole janitor, there were two people, if not three people who had previously performed his assigned work.

21. In fact, Plaintiff found that it was not even possible to accomplish all the assigned tasks during a nine and a half hour (9.5) work day and came in on most Saturdays or Sundays, or both, to get caught up with the cleaning.

22. For the first four months of working at the school, Plaintiff recorded his actual daily work hours, which evidenced his daily overtime work hours.

23. After four months of recording all of his actual hours, including overtime hours, without receiving any overtime compensation whatsoever, Plaintiff began just writing down forty hours for the week, irrespective of the fact that he continued to work the same extended work days and continued to come in to work on the weekends.

24. Defendant, by virtue of the daily sign in and sign out sheets for the first four months, knew about Plaintiff's overtime hours and knowingly and willfully failed to pay Plaintiff overtime compensation for all of the hours he worked over 40 each workweek.

25. Defendant has denied that the school building was open daily after 5:00 pm., denied that Plaintiff had access to the building after 5:00 pm on weekdays and denied that Plaintiff had access to the building on Saturdays and Sundays.

26. Plaintiff informed Defendant that he has hard copies of text communications between himself and the then school principal, Audra Bobbs, dating back to the first few weeks of his employ, where Plaintiff is letting the school principal know that on this particular Saturday (October 19, 2019) he was turning the security system back on after completing the work he had come to do on that day.

27. On October 26, 2019, also a Saturday, Mr. Belcher wrote Ms. Bobbs asking permission to go in the next day, on a Sunday, to do trash removal and clean up as the school was then experiencing a chronic gnat problem.

28.     From that time on, Plaintiff's going into the school on Saturdays and Sundays became so routine, that he no longer needed to secure permission as he was given a key and the security alarm's access code.

29.     The elementary charter school that Defendant managed, according to Defendant's website, catered to "under-resourced" and "underserved youth." Many of the students had behavioral challenges, disabilities or had previously been expelled from more conventional elementary schools.

30.     In addition to trying to keep up with the customary maintenance of the school building, Plaintiff had to clean up after the students who would routinely trash and damage the premises.

31.     On at least ten occasions, Plaintiff had to go to the store to purchase cleaning supplies with his own money because Defendant neglected to keep the school stocked with cleaning supplies.

32.     The school's floor cleaning machine was broken for the entire seven-month duration of Plaintiff's employment, compelling Plaintiff to mop exceedingly large areas of the building. There were so many floors to mop that Plaintiff recalls seeing one of the teachers, an elderly woman, given the task to mop some of the hallways.

33.     Defendant was negligent in maintaining cleaning equipment in good working order.

34.     Plaintiff's tasks were so physically demanding, that he suffered physically from overextending himself in an attempt to keep up with the necessary maintenance. He was required to climb ladders to clean the scuff marks off the ceilings left by the students throwing things at the ceilings.

35. From the first day of Plaintiff's employment at the school, the school had a chronic foul smell that Plaintiff could not determine the source. After three months, Plaintiff discovered the source of the smell, a rather large collection of trash stashed away in the basement, presumably left by the former janitor, and Plaintiff took care of it.

## COUNT ONE
### (Fair Labor Standards Act Violations)

36. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

37. Defendant's failure to pay Plaintiff overtime compensation at the rate of one and one-half times his regular rate of pay for all of the hours he worked over 40 each workweek violated the FLSA, 29 U.S.C. §§ 201-219.

38. By engaging in the above-mentioned activities, Defendant willfully, knowingly and/or recklessly violated the provisions of the FLSA.

39. As a result of Defendant's practices and policies, Plaintiff has been damaged in that he has not received overtime due to him pursuant to the FLSA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Honorable Court:

A. Award Plaintiff actual damages for unpaid overtime compensation;

B. Award Plaintiff liquidated damages equal in amount to the unpaid overtime compensation found due to Plaintiff under the FLSA;

C. Award Plaintiff pre- and post-judgment interest at the statutory rate;

D. Award Plaintiff attorneys' fees, costs, and disbursements; and

E. Award Plaintiff further and additional relief as this Court deems just and proper.

Respectfully submitted,

/s/ Arlene N. Potash
Arlene N. Potash (0072019)
Anthony J. Lazzaro (0077962)
The Lazzaro Law Firm, LLC
The Heritage Building, Ste 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
arlene@lazzarolaw.com
anthony@lazzarolawfirm.com
Attorneys for Plaintiff

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

/s/ Arlene N. Potash
One of the Attorneys for Plaintiff